FILED
2011 Aug-12  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BIG WARRIOR CORPORATION** | ) | |
| **and GREG CORNELIUS,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| v. | ) | 2:10-cv-02468-AKK |
| | ) | |
| **AGL RESOURCES, INC., JAY** | ) | |
| **SUTTON, KYLE ORMSBY, and** | ) | |
| **LES FLORA,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the court is AGL Resources, Inc. ("AGL"), Jay Sutton, Kyle Ormsby, and Les Flora's ("Individual Defendants") (collectively "Defendants") Amended Motion to Dismiss for Improper Venue, Lack of Personal Jurisdiction, and Failure to State a Claim.  Doc. 10.  After Big Warrior Corporation and H. Greg Cornelius ("Plaintiffs") noted the need for jurisdictional discovery, (docs. 8 at 29-30; 8-2 at 2), on Defendants' motion, (doc. 12), the court permitted limited jurisdictional discovery, and afforded both sides an opportunity to file additional briefing after the limited discovery.  Doc. 13.

Having considered the parties' briefs, their evidentiary submissions, and the

record, the court **DENIES** the Defendants' Motion to Dismiss for Improper Venue

and **GRANTS** their Motion to Dismiss for Lack of Personal Jurisdiction.[1]

## I.  FACTUAL BACKGROUND

Plaintiffs Big Warrior Corporation ("Big Warrior") and H. Greg Cornelius

("Cornelius") allege intentional fraud, misrepresentation, suppression, interference

with business and contractual relations and other similar torts against Defendants

AGL, Jay Sutton ("Sutton"), Kyle Ormsby ("Ormsby"), and Les Flora ("Flora").

Doc. 8 at 1.  Defendants allegedly committed these tortious acts with respect to a

contract between Big Warrior and Virginia Natural Gas ("VNG"), a subsidiary

corporation of AGL.  Docs. 3 at 4; 15-2 at 59 ("Cornelius Dep." 225:14-23, Dec.

10, 2010).  Although these Defendants' actions that are the basis for this lawsuit

occurred in their capacity as employees or agents of VNG and for a contract in

Virginia, Plaintiffs have sued them instead of VNG, perhaps in an effort to avoid

the contract's arbitration clause.  To no surprise, Defendants contend that they

lack the minimum contacts necessary for Plaintiffs to sue them in Alabama and

have moved to dismiss.

---

[1] In light of this ruling, Defendants' Motion to Dismiss for Failure to State a Claim, (doc. 10), and the Individual Defendants' Motion to Compel Arbitration, (doc. 17), are moot. Although the court did not consider either motion, it did, however, consider exhibits submitted with Plaintiffs' Response to the Motion to Compel Arbitration to the extent the evidence was relevant to personal jurisdiction.

The court states the following facts in accordance with the parties'
allegations and the evidence presented.  However, because Plaintiffs failed to
supplement their affidavits and responsive briefs despite specifically noting the
need for discovery, *see, e.g.*, docs. 8 at 30 ("[F]urther discovery on this issue is
plainly necessary."); 8-2 at 2 ("In short, discovery is needed."), they failed to
clarify whether the discovery confirmed the factual assertions in their initial brief.
As a result, the court construes any uncontroverted statements in the Complaint as
true, but resolves inferences in favor of Plaintiffs only where Cornelius'
deposition does not contradict his earlier affidavit.  *See Mercantile Capital, LP v.
F. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002).

    A.  <u>The Parties</u>

Big Warrior, which is no longer in business, was a general contracting
company incorporated under Alabama law with its principal place of business in
Alabama.  Doc. 1-1 ¶ 1.  Cornelius, domiciled in Cleveland, Alabama, was its
owner and president.  *Id.* ¶ 2; Cornelius Dep. 22:8-10.

Defendant Sutton is a resident of Georgia and has limited personal contacts
with Alabama.  *See* doc. 3-4.  In his affidavit, Sutton claims he is an employee of

AGL Services Company[2] and that he has never worked or served as an agent of AGL, a named defendant. *Id.* ¶¶ 3-4.  However, Plaintiffs note that Sutton appears on the AGL website as its Vice President of Engineering Services and Supply Chain.  Doc. 8-2 at 4.

Likewise, Defendant Ormsby is a resident of Georgia and has limited personal contacts with Alabama. *See* doc. 3-2.  In his affidavit, Ormsby similarly claims that he is an employee of AGL Services Company and that he has never worked for AGL. *Id.* ¶¶ 3-4.  However, e-mails from Ormsby, published in connection with Plaintiffs' Opposition to Arbitration, include a signature block representing him as an AGL employee. *See generally* doc. 19-1.  Further, the e-mail correspondence suggests that Ormsby possessed the authority to approve payments on behalf of AGL. *Id.*  Finally, Cornelius testified that Ormsby, as well as Sutton, offered business cards representing themselves as AGL employees. Cornelius Dep. 108:9-10.

Flora is a resident of Virginia and also has limited personal contacts with Alabama. *See* doc. 3-3.  In his affidavit, Flora states that he is currently an employee of AGL Services Company, and that he worked for VNG during the

---

[2] AGL Services Company is a separate and independent corporate entity, doc. 3 at 5 n. 4, and is not a party to this litigation.  Any reference to AGL Services Company in this Memorandum Opinion will include its full name to avoid confusion with Defendant AGL.

contractual time frame.  *Id.* ¶ 3.  E-mail correspondence from Flora reflects his

employment with VNG during the relevant time period.  *See generally* doc. 19-1.

Lastly, AGL, an energy services holding company, is a Georgia corporation

with its principal and only place of business in Atlanta, Georgia.  Doc. 3-5 ¶ 3.

Although not a party to the contract between VNG and Big Warrior ("VNG

Contract"), documents published by Plaintiffs indicate AGL routinely made

payments on behalf of VNG.  *See generally* doc. 19-1.  AGL also purportedly

employed some of the Individual Defendants during the relevant time frame.

Docs. 8-2 at 4; 19-1.

B.  The Contract

VNG, an independent local distributor and natural gas utility, supplies

natural gas to customers in Virginia.  Doc. 3 at 2.  In 2006, VNG decided to

expand gas service in and around Hampton, Newport News, Chesapeake, and

Norfolk, Virginia through the Hampton Roads Crossing Pipeline ("HRX Project").

Doc. 3-1 ¶ 5.  James Conner ("Conner"), Manager - Supply Chain for AGL and a

VNG representative, solicited a bid for the HRX Project from Big Warrior in June

2008.  Cornelius Dep. 49:18-50:3; 76:2-5; 83:13-84:7; 84:9-13.  In response, Big

Warrior prepared a bid and returned it to VNG.  Docs. 1-1 ¶ 12; 3-1 ¶¶ 6-7.  Both

Cornelius and Tim Bullard ("Bullard"), Vice President of Big Warrior, traveled to

Virginia to attend a pre-bid conference and to assess project conditions before submitting their bid.  Cornelius Dep. 22:8-10*; 91:1-92:5.*

VNG awarded Big Warrior the contract for Newport News and Norfolk, Virginia, *see id.* 31:15-18; 33:6-15; 97:3-99:18, and on September 29, 2008, Big Warrior and VNG entered into a contract for the installation of the HRX Pipeline. Doc. 3-1 ¶ 7.  Conner and Sutton signed the contract, worth between $19-$22 million, on behalf of VNG.  Cornelius Dep. 45:2-11; 55:21-23; 57:23-58:8.  Big Warrior and VNG agreed to resolve their disputes through arbitration.  Doc. 5-1 at 29-30.

C.  Performance of the Contract

Big Warrior managed the HRX Project from Alabama, but performed a majority of the work in Virginia, completing only some pipe fabrication work in Alabama.  Cornelius Dep. 33:16-37:1.  VNG and its agents, including Defendants, administered the project from either Georgia or Virginia.  Doc. 3 at 6.  Big Warrior submitted weekly pay requests to VNG, which Flora reviewed and approved for payment.  Cornelius Dep. 111:13-112:9; 115:8-11.  According to Cornelius, AGL then wired funds into Big Warrior's account at the Superior Bank in Cleveland, Alabama.  *Id.* 113:3-12; 118:20-120:2.

The project soon ran into monetary difficulties, and on July 17, 2009, Big

6

Warrior wrote VNG demanding an additional $2.3 million for changed site conditions.  *Id.* 125:3-126:12.  The parties subsequently amended the VNG Contract at the end of July to reflect this increase in compensation.  *Id.*  On August 5, 2009, Big Warrior again demanded additional funds, this time requesting $4.132 million.  *Id.* 126:13-128:11.  Thereafter, Cornelius met with Sutton and Flora in Virginia to discuss and negotiate for this additional compensation.  *Id.* 140:23-141:7.  These negotiations led to the second amended contract, which the parties signed in September 2009.  *Id.* 126:13-128:11.[3]

Despite the additional compensation, Plaintiffs allege Big Warrior still suffered significant losses on the HRX Project.  *Id.* 152:10-18.  However, according to Plaintiffs, VNG would have suffered a huge setback if Big Warrior failed to complete the project.  *Id.*  Plaintiffs believe that in response to Big Warrior's rumored departure from the project, Ormsby and Sutton attempted to reassure them that AGL and/or VNG would compensate Big Warrior for job-related losses if it completed the project.  *Id.*  Cornelius testified that, initially, Ormsby called him at his office, asking him to "do whatever it takes" to complete the project and assuring him that "we're going to take care of you."  *Id.* 154:10-

---

[3]The parties have not published Plaintiffs' demand letters and their amended contracts to the court.

156:22.  Cornelius further testified that, a week later, Sutton contacted him on his cell phone to urge him to finish the job at all costs, stating that they "would take care of" Big Warrior.  *Id.* 158:15-160:1.  Neither conversation addressed the specific additional compensation required and neither party followed-up.  *Id.* 156:23-158:2; 164:16-166:6.  However, according to Plaintiffs, Big Warrior relied on these representations to complete the HRX Project.  Doc. 1-1 ¶ 35.

Cornelius testified that on December 2, 2009, Big Warrior received a wire confirmation from AGL, indicating that it would receive approximately $280,000 the next day.  Cornelius Dep. 174:12-15.  When Big Warrior did not receive this wire transfer, Donna McDougal ("McDougal"), Big Warrior's corporate secretary, called Flora for clarification.  *Id.* 175:18-23.  Cornelius also called Flora.  *Id.* 176:12-13.

According to Cornelius, Flora called him back at the office an hour later and told him that Ormsby stopped the payment because of an outstanding invoice from Cowin Equipment for warranty work it did on behalf of Big Warrior on an unrelated project in Cherokee, Georgia.  *Id.* 177:13-21; 190:12-13.  Cornelius then called Ormsby, who reiterated AGL's concern for the outstanding invoice and told Cornelius that Sutton had directed the stop payment.  *Id.* 179:21-180:16; 198:21-23.  The next day, Ormsby contacted Big Warrior demanding accounts payables

and original lien waivers from all vendors on the HRX project and other AGL related jobs before releasing further payments to Big Warrior. *Id.* 202:2-20. Despite complying with Ormsby's request, Big Warrior did not receive payment. *Id.* Big Warrior followed-up on December 9, 2009, and January 10, 2010, by sending letters to Ormsby and VNG demanding payment of $6.342 million, *id.* 238:22-240:10, but has received no payments to date.

Rather than filing a claim against VNG for breach of contract, Plaintiffs have chosen to sue AGL and the Individual Defendants instead for, among other things, interfering with Big Warrior's contract with VNG. Defendants have moved to dismiss based on improper venue and jurisdictional grounds.

## II. VENUE

Defendants allege that venue is improper in this court. Under Federal Rule of Civil Procedure 12(b)(3), a defendant may "challenge the propriety of the venue selected by plaintiffs by filing a motion to dismiss on the ground of improper venue." *Butts v. Dress Barn, Inc.*, No. 2:09-cv-836-MHT, 2009 WL 5068783, at *2 (M.D. Ala. Dec. 17, 2009). If a defendant alleges improper venue under this rule, the plaintiff must show that the venue selected is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.3d 843, 845 (11th Cir. 1988) (stating that the plaintiff must make a prima facie showing of venue); *Rogers v. Civil Air*

9

*Patrol*, 129 F. Supp. 2d 1334, 1336 (M.D. Ala. 2001) (asserting that the plaintiff bears the burden of establishing the propriety of venue).  If the court finds that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

However, the general venue provision, 28 U.S.C. § 1391, does not apply to removed cases.  *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001).  "Instead, § 1441(a), by requiring removal to the district court for the district in which the state action is pending, *properly fixes* the federal venue in that district."  *Id.* (emphasis added).  Therefore, once a defendant removes a case to federal court, he cannot move to dismiss on the ground of improper venue under § 1391.  *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) (holding that a case removed under § 1441(a) could not be dismissed by the district court for improper venue under § 1391).  That is precisely the case here - i.e. notwithstanding Defendants' request that the court review the propriety of venue under § 1391, doc. 3 at 18, their decision to remove takes this case from the purview of § 1391, and brings it under the authority of § 1441(a).  *Hollis*, 259 F.3d at 1299.  Accordingly, the Motion to Dismiss for improper venue is **DENIED**.

## III.  PERSONAL JURISDICTION

Defendants' primary argument is that dismissal is warranted on jurisdictional grounds.  Specifically they allege that they lack the necessary contacts with Alabama for this court to exercise jurisdiction over them.  To no surprise, Plaintiffs disagree and contend that this court can exercise specific jurisdiction over Defendants.

A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit based on lack of personal jurisdiction.  "The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant."  *Meier v. Sun Int'l Hotels, Inc.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002).  "If a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"  *Whitney Info. Network, Inc. v. Xcenture Venture, LLC*, 199 F. App'x 738, 741 (11th Cir. 2006) (quoting *Meier*, 288 F.3d at 1269).  "However, the allegations in the complaint still must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *Mercantile Capital, LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (citing *S &*

*Davis Int'l., Inc. v. Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000)).

B. <u>Analysis</u>

"Federal courts sitting in diversity are bound by the same due process limits on the exercise of personal jurisdiction as local state courts." *Rhodes v. Unisys Corp.*, 170 F. App'x 681, 683 (11th Cir. 2006). Under Alabama law, courts may exercise jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.2d 1351, 1355-56 (11th Cir. 2000); *see also* Ala. R. Civ. P. 4.2(b); *Hiller Invs. Inc. v. Insultech Grp., Inc.*, 957 So. 2d 1111, 1115 (Ala. 2006) ("When applying Rule 4.2(b), this court has interpreted the due process guaranteed under the Alabama Constitution as coextensive with that guaranteed under the United States Constitution."). Thus, Alabama courts may exercise specific personal jurisdiction over a nonresident defendant when the cause of action is related to his contacts with Alabama. *See Helicopteros Nationales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984).[4]

"The fundamental inquiry of specific jurisdiction is whether the defendant

_____

[4] "Of course, a court could also summon a nonresident to answer claims unrelated to his contacts with the forum so long as those contacts are 'continuous and systematic.'" *Rhodes*, 170 F. App'x at 684. Plaintiffs concede, however, that there is no such general personal jurisdiction over any of the Defendants. Doc. 8 at 13.

has such 'minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Rhodes*, 170 F. App'x at 684 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Such minimum contacts exist if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985).  "[A] defendant may . . . be subject to jurisdiction without entering the forum" if "the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Inc. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (internal citations omitted).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (internal citations omitted).  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (internal citations omitted). "The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so

13

that the sovereign has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre Mach.*, 131 S. Ct. at 2789.  Significantly, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

Turning now to the facts here, Plaintiffs allege that Defendants have sufficient contacts with Alabama for the court to exercise specific jurisdiction over them, in particular, under the *Calder* "effects" test.  The court will analyze Plaintiffs' contentions under the *Calder* "effects" test first and, then, although there is some overlap, the court will analyze jurisdiction under the broader specific jurisdiction context.

(i) Calder Effects Test

(a) Alabama Application

Plaintiffs invoke the *Calder* "effects" test, established by the Supreme Court in *Calder v. Jones* for cases involving intentional torts, to support their contention that this court has personal jurisdiction over Defendants.  465 U.S. 783 (1984). "The *Calder* effects test is a lens through which the connectivity between the

14

defendant, cause of action, and forum state may be viewed." *Rhodes*, 170 F. App'x at 684.  In *Calder*, the plaintiff commenced a libel action in California against a Florida defendant author.  465 U.S. at 785.  Using the "effects" test, the Supreme Court affirmed California's exercise of personal jurisdiction over the Florida defendant because California was the focal point of the article and the harm.  *Id.* at 789.  The Supreme Court formulated the "effects" test "as requiring a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008).

Courts in Alabama "define the *Calder* test as requiring something more than mere awareness that one's intentional acts will cause harm in the forum state." *Ex Parte Gregory*, 947 So. 2d 385, 394 (Ala. 2006).  "The *Calder* effects test can only be satisfied if the plaintiff can point to the contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity."  *DocRX, Inc. v. DOX Consulting, LLC*, 738 F. Supp. 2d 1234, 1249 (S.D. Ala. 2010).

For example, in *Rhodes*, a case in which an Alabama plaintiff sued his nonresident employer for torts and contract claims, the Eleventh Circuit declined to exercise personal jurisdiction under the *Calder* "effects" test over a nonresident

15

employer who sent a solitary e-mail informing the plaintiff of the termination of an incentives plan.  170 F. App'x at 684.  In so concluding, the court stated that "[i]t is unlikely that a single contact with the forum state by a defendant will be sufficient to create jurisdiction over him by the courts in Alabama."  *Id.* at 684; *see also*, *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (per curiam) (finding no personal jurisdiction from limited telephonic contact and no visit to forum state in a tort and contract case).

(b) Defendants' Actions Do Not Satisfy *Calder*

Here, Defendants challenge the applicability of both the second and third prongs of the "effects" test, asserting that Plaintiffs fail to allege tortious conduct expressly aimed at the forum state and that Plaintiffs' losses are due to the performance of an existing contract and unrelated to the alleged tortious conduct. Doc. 15 at 5-6; *see Licciardello*, 544 F.3d at 1286.  The court agrees with Defendants because their alleged tortious conduct is limited to one or two phone calls each concerning the contract Big Warrior signed with VNG.  Cornelius Dep. 154:10-160:1; 175:18-202:20.  Significantly, per Plaintiffs' own admissions, Plaintiffs initiated at least some of these conversations.  *Id.* 174:12-198:23. Moreover, none of the Defendants visited Alabama to manifest their tortious conduct.  *See* docs. 3-2 ¶¶ 7-11; 3-3 ¶¶ 8-12; 3-4 ¶¶ 6-9; 3-5 ¶ 5.  Like in *Rhodes*

16

and in *Future Technology Today*, where the defendants had limited contacts with the forum state, which precluded the exercise of personal jurisdiction over them, the court finds that Defendants' limited contacts with Alabama fall short of satisfying the *Calder* "effects" test.

Additionally, Plaintiffs' allegations do not evince tortious conduct intentionally targeted at or focused on Alabama. Rather, Plaintiffs' argument seems to rely on Defendants' knowledge that Plaintiffs' principle place of business is located in Alabama. *See* doc. 8 at 16. Essentially, Plaintiffs contend that when a party deals with a company it knows is located in Alabama and purportedly harms the Alabama company, even if that party's conduct occurred outside Alabama, that party nonetheless made Alabama the focal point of its tortious conduct and should anticipate being haled into court here. The law, however, requires more than simply showing a party made a few calls or sent e-mails. Indeed, for example, wholly absent from Plaintiffs' argument is a meaningful analysis of purposeful availment. In fact, Plaintiffs have failed to establish how the limited telephonic and e-mail contact with Alabama here constitutes purposeful availment of this state. Therefore, the court disagrees with Plaintiffs and finds that Defendants' attenuated contacts, combined with a want of purposeful availment, preclude the use of the *Calder* "effects" test to exercise

17

personal jurisdiction over them.  *See, e.g.*, *Far W. Capital*, 46 F.3d at 1079 ("[T]o resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposely availed itself of the benefits of the forum's laws.").

(ii) Minimum Contacts Test

Notwithstanding the court's finding that Plaintiffs cannot show specific jurisdiction under the *Calder* "effects" test, the court will ascertain nonetheless whether an overall basis exists to find that Defendants' contacts with Alabama are sufficient for the court to exercise specific jurisdiction over them.  "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint."  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  The exercise of specific jurisdiction requires that the defendant's contacts with the forum: (1) give rise to the cause of action; (2) involve some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in that forum.  *Id.* "Jurisdiction will not be supported because of 'random, fortuitous, or attenuated contacts . . . or because of the unilateral activity of a third person.'"  *Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1265 (N.D. Ala. 2000) (quoting *Madara v. Hall*,

18

916 F.2d 1510, 1516 (11th Cir. 1990)).

To help its analysis of this matter, the court draws on analogous case precedent for guidance.  First, in *Burger King*, the Supreme Court addressed the viability of exercising personal jurisdiction over a nonresident defendant who contracted into the forum state.  471 U.S. at 462.  Specifically, the defendant, a Michigan franchise owner, entered into a contract with the plaintiff, a Florida corporation.  *Id.*  The defendant "carried on a continuous course of direct communications by mail and by telephone," and deliberately reached out to the plaintiff in the forum state.  *Id.* at 481.  The plaintiff alleged that these contacts were sufficient to create specific jurisdiction over the defendant.  The trial court agreed and the Eleventh Circuit reversed.  *Id.* at 469-70.  The Supreme Court granted certiorari and noted that "an individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum."  *Id.* at 478.  However, notwithstanding the defendant's lack of significant physical contact with the forum state, the Supreme Court concluded that the defendant was subject to personal jurisdiction in the forum state because the "franchise dispute grew directly out of a 'contract which had a *substantial* connection with that State.'"  *Id.* at 479 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (emphasis added)).

19

Next, in *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389 (11th Cir.
1988), the court exercised personal jurisdiction over two nonresident corporate
representatives who visited the forum state once for sizable contract negotiations.
854 F.2d at 393.  In so finding, the court stated that "such a purpose[ful availment]
occurs when '[a] meeting in the forum state . . . involves *significant* negotiations
of important terms' of a contract," focusing on the defendants' visit to the forum
state.  *Id.* at 392-93 (quoting  *Sea Lift, Inc. v. Refinadora Costarricense Petroleo,
S.A.*, 792 F.2d 989, 993 (11th Cir. 1986)) (emphasis added).

Finally, in *Norment Security Group, Inc. v. Granger Northern, Inc.*, No.
2:08-CV-533-WKW, 2009 WL 458540 (M.D. Ala. Feb. 23, 2009), the court
refused to exercise personal jurisdiction over Maine defendants on facts that are
substantially similar to those presented here - i.e., an Alabama company
performing construction projects out-of-state, specifically, Massachusetts, New
Hampshire, and Vermont.  *Id.* at *2.  The plaintiffs executed the contract in
Alabama, defendants directed their electronic, telephonic, and postal
communications, as well as payments under the contract, to plaintiffs in Alabama,
and plaintiffs completed nearly one-third of the contracted work in Alabama.  *Id.*
at *6.  Like the Defendants in this case, the defendants in *Norment Security Group*
never set foot in Alabama.  *Id.* at *9.  After "[c]onsidering the quality, nature, and

extent of [defendants'] contacts with Alabama, as well as the relationship between those contacts and the instant litigation," the court concluded that "[defendants'] limited contacts with Alabama cannot support a finding of purposeful activity invoking the benefits and protections of Alabama." *Id.* at *11.

With these guidelines in mind, the court turns now to the Defendants here and their contacts with Alabama.

(a) Jay Sutton

The only allegation in the Complaint that connects Sutton to this case is a solitary phone call, doc. 1-1 ¶ 18, Sutton placed to Cornelius' cell phone, in response to rumors about Big Warrior abandoning the HRX Project.  Cornelius Dep. 152:10-152:18.  Allegedly, Sutton promised Cornelius additional compensation if Big Warrior completed the contract.  *Id.* 158:15-160:1.  To bolster their case for jurisdiction over Sutton, Cornelius added that Sutton signed the VNG contract, purportedly acting as an agent for VNG, and participated in the negotiations leading to the first and second amendments to the VNG contract.  *Id.* 55:21-23; 140:23-141:7.  Further, Cornelius added that Ormsby allegedly stopped the disputed final wire transfer at Sutton's direction.  *Id.* 198:21-23.  Other than this, the evidence failed to reveal any further involvement by Sutton in the daily administration of the HRX Project.

21

Notably, none of Sutton's actions occurred in Alabama.  In fact, Sutton's personal contacts with Alabama are tenuous at best.  *See* doc. 3-4.  Other than the phone conversation, which he arguably directed towards Alabama, Sutton's other contacts fail to demonstrate anything but a distant connection with Alabama, deduced through his contacts with an Alabama corporation.  However, "[c]onsistent with the Supreme Court's holding in *Burger King*, merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident."  *Licciardello*, 544 F.3d at 1286 (quoting *Ziegler*, 54 F.3d at 473). Instead, a plaintiff must show that a defendant visited the forum state to carry out some of the contractual negotiations or otherwise purposefully availed himself of the privilege of conducting business in the forum state.  *See, e.g.*, *Williams Electric Company*, 854 F.2d at 392-93.

Here, Sutton never visited Alabama.  Doc. 3 at 6.  Further, his paltry contacts with Alabama mirror those of the defendants in *Norment Security Group*, 2009 WL 458540, at *6, and do not demonstrate "purposeful[] avail[ment] of the privilege of conducting activities within" Alabama.  *Consol. Dev. Corp.*, 216 F.3d at 1291.  Not only do Sutton's contacts fail to rise to the level of "purposeful availment," they also fail to forewarn him of the possibility of litigation in Alabama, especially since the contract here contemplated work in Virginia and

specifically applied Virginia law to any disputes based on that contract.  *See generally* doc. 5-1.  Moreover, even the substance of Sutton's alleged phone conversation with Cornelius would not induce an individual to reasonably anticipate being haled into court in Alabama.  Indeed, per Cornelius' admissions, the conversation did not address the specifics of the additional compensation requested, and Sutton's response simply promised to "take care of" Cornelius.  Cornelius Dep. 158:15-166:6.  Given Sutton's attenuated contacts with Alabama and his limited role in the events that unfolded, this court cannot exercise personal jurisdiction over him.

(b) Les Flora

Plaintiffs' case for jurisdiction against Flora is even more tenuous.  It seems Plaintiffs are suing Flora precisely because he works for the entity with whom they contracted.  Specifically, Flora's primary involvement in the HRX Project included daily administration of the project on behalf of VNG from Virginia.  *Id.* 111:13-112:9.  Further, there is only limited evidence regarding direct e-mail contact between Flora and Big Warrior, and Plaintiffs have not alleged or offered any evidence of pervasive or repetitive contact with Big Warrior in Alabama.  *See* docs. 19-1; 19-3.  In fact, Plaintiffs do not allege that Flora visited them in Alabama at any time.  Flora is apparently a defendant in this matter because of

these limited e-mails and two phone calls.  In the first, he represented that AGL

would pay an invoice "in tomorrow night's run."[5]  Doc. 1-1 ¶ 20.  The second

phone call occurred when the promised wire transfer did not arrive, and *Plaintiffs*

called Flora for clarification.  *Id.* 175:18-176:13.  Flora returned the phone call

within an hour with details.  *Id.* 190:12-13.  These two calls are the primary basis

for Plaintiffs haling Flora to this court.

Again, Flora's limited contacts with Alabama are attenuated and occurred

solely because Big Warrior's principal place of business is in Alabama.  Based on

the evidence, Flora's primary contact with Big Warrior occurred at the project site

in Virginia.  In other words, the referenced phone conversations and limited e-mail

exchanges are the only contacts upon which this court can base personal

jurisdiction.  However, given Cornelius' admissions that Big Warrior initiated at

least some of those phone conversations, the support for purposeful availment is

deficient.  *See Norment Sec. Grp.*, 2009 WL 458540, at *11 (finding long distance

communications insufficient for the exercise of personal jurisdiction).  In short,

Plaintiffs have failed to show Flora had sufficient contacts with this forum or that

---

[5] Cornelius, however, cast doubt on this contention, when he testified that Big Warrior received a "wire confirmation" from AGL rather than a phone call from Flora.  Cornelius Dep. 174:12-15.  Cornelius later recanted, suggesting that perhaps McDougal received a phone call from Flora.  Id. 183:19-184:16.  Nevertheless, construing the evidence in favor of Plaintiffs, the court assumes that this phone call with Flora occurred.

his alleged conduct indicated that he should have reasonably anticipated that Plaintiffs would hale him into this court.  Therefore, this court cannot exercise personal jurisdiction over Flora.

(c) Kyle Ormsby

Plaintiffs' allegations against Ormsby are similarly deficient.  Ormsby is a defendant here because he allegedly called Big Warrior's office in Alabama to dissuade Cornelius from abandoning the HRX Project.  Cornelius Dep. 154:10-156:22.  Later, when Big Warrior contacted him to resolve the issue with the cancelled wire transfer, he invoked a pending invoice on an unrelated project.  *Id.* 179:21-180:16.  He then contacted Big Warrior the following day to demand accounts payable and lien waivers from all vendors on the HRX Project before releasing any payments to Big Warrior.  *Id.* 202:2-20.  Also, e-mails produced by Plaintiffs evince multiple communications, often initiated by Ormsby, between him and the accounting staff at Big Warrior in Alabama.  *See* doc. 19-1.  Plaintiffs allege that Ormsby's conduct gave rise to this action, i.e. VNG breached the contract with Big Warrior purportedly because of Ormsby.  Therefore, Plaintiffs contend the court can exercise personal jurisdiction over him.

The court disagrees.  Like Sutton and Flora, Ormsby never entered Alabama in connection with these allegations or the HRX Project.  *See* doc. 3 at 6.

25

Moreover, Ormsby's contacts with Big Warrior in Alabama, including written

representations of forthcoming payment, do not show purposeful availment of the

privilege of conducting activities in Alabama.  In fact, like Sutton and Flora, he

was acting in his capacity as a representative for VNG, the party with whom the

Plaintiffs contracted.  As in *Norment Security Group*, the "quality, nature, and

extent of [Ormsby's] contacts with Alabama, as well as the relationship between

those contacts and the instant litigation" cannot support a finding of personal

jurisdiction over Ormsby in Alabama.  2009 WL 458540, at *11.  Further, the

nature of these contacts does not indicate that Ormsby reasonably anticipated

being haled into court in Alabama or that he purposefully availed himself of the

privilege of conducting business in Alabama.  Therefore, this court cannot subject

Ormsby to personal jurisdiction in Alabama.

(d) AGL

Defendants contend AGL had no involvement in the HRX Project and that

AGL never employed the Individual Defendants.  *See* docs. 3-2; 3-3; 3-4.

However, the evidence demonstrates that Sutton and Ormsby represented

themselves as employees of AGL in their dealings with Big Warrior.

Nevertheless, Sutton and Ormsby's purported representations alone will not

suffice because apparent authority is "based on the principal's holding the agent

26

out to a third person as having the authority under which he acts," rather than on "what the agent holds out his authority to be." *Johnson v. Shenandoah Life Ins. Co.*, 281 So. 2d 636, 640 (Ala. 1973) (citing 3 Am. Jur. 2d *Agency* § 74 (2011): "The apparent power of an agent is to be determined by the acts of the principal."). In that regard, focusing on AGL's actions also reveals that AGL represented to third parties that Sutton and Ormsby are its agents.  For instance, on its website, AGL lists Sutton as Vice President, Engineering Services & Supply Chain.  Doc. 8.  More persuasively, AGL *ratified* Ormsby's authority as its agent and demonstrated its involvement in the HRX Project by repeatedly paying HRX vendors with AGL checks after Ormsby sent e-mails stating that payments were forthcoming.  *See generally* doc. 19-1.

Under the auspices of this agent-principle relationship, the court evaluates AGL's contacts with Alabama for the exercise of personal jurisdiction.  To do so, the court draws again on the case law and notes that, in *Burger King*, the Supreme Court viewed the Michigan defendant's solicitation and negotiation with a Florida corporation for a twenty-year contract as evidence of purposeful availment of the privilege of conducting business in Florida.  471 U.S. at 479-480.  Similarly, here, viewing the facts in the light most favorable to Plaintiffs, VNG solicited and negotiated a $20 million contract with an Alabama corporation, Cornelius Dep.

27

45:2-11; 49:18-50:3; 55:21-23; 57:23-58:8; 76:2-5; 84:9-13, and apparently AGL and some of its employees managed the contract and/or made the payments due under the contract.  *Id.*  However, unlike in *Burger King*, where the defendant repeatedly reached out to Florida and the plaintiffs enforced the agreements from Florida, here, VNG and/or AGL negotiated and enforced the VNG contract in Virginia.  *See* 471 U.S. at 480.  Moreover, neither AGL nor its agents ever visited Alabama.  *See also Williams Electric Co.*, 854 F.2d at 392-93 (emphasizing a meeting in the forum state for contract negotiations as a basis for exercising personal jurisdiction over the defendant).  To do as Plaintiffs suggest here, i.e. to exercise jurisdiction over a company for a contract it issued and/or managed in Virginia simply because it called or sent e-mails to an Alabama company and made payments to the Alabama company, would violate the very "notions of fair play and substantial justice" and minimum contacts that the case law has repeatedly stated are necessary for a court to exercise jurisdiction over a foreign corporation or citizen.

　　As our sister court in the Middle District of Alabama held in similar circumstances in *Norment Security Group*, AGL's contacts do not permit this court's exercise of personal jurisdiction over it.  2009 WL 458540 at *11.  Although direct solicitation of a contract by a company can sometimes be

considered purposeful availment, a one time solicitation does not suffice.[6]  *See Sea Lift*, 792 F.2d at 994 (rejecting personal jurisdiction over a one-time contract for work to be done outside the forum state).  AGL's routine payments to Plaintiffs in Alabama are likewise insufficient to exercise personal jurisdiction over them.  *See Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (holding payment directed at the forum state for services performed in another state insufficient for personal jurisdiction).

The court recognizes that Plaintiffs conducted some of the pipe fabrication work in Alabama, in addition to managing the project from Alabama.  Cornelius Dep. 33:16-37:1.  However, the VNG contract does not envision the performance of any work in Alabama.  *See generally* doc. 5-1.  The unilateral activity of Plaintiffs, then, in performing management and pipe fabrication work in Alabama is a fortuitous contact, and is irrelevant for the exercise of personal jurisdiction over AGL.  The court also notes that the contract itself contemplates dispute resolution in Norfolk, Virginia, and under Virginia's procedural rules.  Doc. 5-1 at 29-30.  This is not an insignificant fact and, indeed, suggests that the parties

---

[6] Although there is minimal evidence of other contracts between AGL and Big Warrior, the court does not know if AGL is a party to those contracts or even if AGL solicited those contracts.  In any event, the court cannot consider other unrelated contracts for specific personal jurisdiction.  Doc. 8 at 13.

agreed to handle their disputes in Virginia rather than in Alabama as Plaintiffs

seek.  This further indicates to the court that neither VNG, nor its associates,

reasonably anticipated being haled into court in Alabama.  For all these reasons,

this court cannot allow Plaintiffs to essentially do an end run around the contract

by suing non-parties and then seeking to exercise personal jurisdiction over them

here in Alabama for purportedly interfering with the contract, especially where, as

here, presumably, Plaintiffs agree they cannot sue in Alabama the entity with

whom they actually contracted.

(iii) Traditional Notions of Fair Play and Substantial Justice

"Where minimum contacts exist between the defendant and the forum state,

the second part of the due process analysis requires consideration of whether the

exercise of jurisdiction over the defendant 'offend[s] traditional notions of fair

play and substantial justice.'"  *Norment Sec. Grp.*, 2009 WL 458540, at *16

(quoting *Int'l Shoe*, 326 U.S. at 316).  Here, the court need not evaluate the

fairness aspect of the due process analysis because Defendants do not have the

requisite minimum contacts with Alabama to justify the exercise of personal

jurisdiction over them.  Nonetheless, the court's consideration of fair play and

substantial justice support its conclusion that personal jurisdiction is lacking

where, as here, Plaintiffs sued several parties outside the contract instead of VNG,

30

for what basically amounts to a breach of contract claim, probably because their contract with VNG contemplates a Virginia forum that Plaintiffs apparently now wish to avoid.

## VI.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Improper Venue is **DENIED** and Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is hereby **GRANTED**.  Doc. 10.

**DONE** this 12th day of August, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE